The plaintiff introduced a grant from the State of North Carolina to John Haywood, for five thousand acres of land, dated the 20th of December, 1791, describing the land in contest as follows: "On the waters of Richland Creek, a branch of Elk River, on a small creek which the commissioners and guard came down on their return from Elk River, the day before they encamped on the north side of Richmond Creek, beginning on the bank of said small creek at a white oak, one mile above a large spring; thence west 894 poles, to a mulberry; thence north 894 poles, to two dogwoods; thence east 894 poles, to a stake; thence south 894 poles to the beginning.
Evidence was also introduced to prove the notoriety and identity of the small creek and spring; but it appeared that no actual survey had ever been made.
The defendant claimed under a grant to Stokeley Donelson, issued by the State of North Carolina, for five thousand acres, on the 17th of June, 1790.
The plaintiff, for the purpose of giving his title effect beyond the date of the grant to Donelson, introduced the following entry: "25th October, 1783. John Haywood enters five thousand acres on the waters of Richland Creek, between said creek and Elk River, on a small creek falling into Richmond Creek, which small creek the commissioners and guard came down on their return from Elk River the day before they encamped on the north bank of Richland Creek, including a large spring about two miles from the mouth of said small creek, beginning on the bank of said small creek, one mile above said spring, running down said small creek for complement."
It appeared that the small creek, from the spring *Page 370 
to its mouth run North 47 West; from a point on the bank of the creek one mile above the spring to the spring, is North 87 West; and from the spring with the meanders of the creek to its mouth, is seventy hundred and seventy poles. The land described in the grant is wholly north of the point of beginning.
If the point of beginning had been the centre of the base of the survey, by no legal shape to be given to the survey, would it include the land in question; nor if the survey were made in a square or oblong, to the cardinal points, and down the creek, making the creek the centre of the survey, so far as it extended, would the land claimed by Donnelson's grant be included.
The principal points relied upon were, that the entry under which the plaintiff claims, was not sufficiently special to avoid an elder grant. That the creek "which the commissioners and guard came down" at a particular period, is not sufficiently described. It acquired no notoriety by that circumstances, and if it were capable of identity, it would be imposing too much trouble on a subsequent locator; and that the grant of the plaintiff does not cover the same land described in the entry, should the entry be deemed special.
The plaintiff has introduced a grant for the land in question, but of a younger date than the grant under which the defendant claims.
To make his title overreach that of the defendant, he has had recourse to his entry; but to effect this the entry must be special, and for the same land included in the grant. We have no statute describing in undoubted terms, what shall be a special entry. I consider that to constitute a special entry, the objects called for should be notorious, or sufficiently described in relation to notorious objects. To give an entry the effect sought to be given to the one in question, it is necessary it should designate with reasonable certainty, the precise land intended to be appropriated, and that the description contained in the entry must quadrate with that contained in the grant. *Page 371 
This case involves a question of much importance, and upon which I am reluctantly now compelled to give an opinion, seeing there have been different notions on the subject.
Is the entry special for the land included in the survey? To give the construction contended for in support of this entry, would be to destroy it altogether. If such a construction be given to an entry that it may include two or more different places with equal certainty, it can not be good for either. Suppose an entry calls to include the French lick. Now if a survey can be made upon it, to include the lick in any part of the tract, can it be pretended that the entry is special for any place? If it were so, might not all the land around the lick which could be included by the sweep of a survey in an oblong or square, made to include the lick at one extremity, be alternately claimed and occuped, and at last surveyed in any direction to the cardinal points, according to the caprice of the owner or surveyor? This is not what 1 understand by requiring an entry to be special. It is important to give such a construction to an entry as that it shall prevail rather than perish. To give this certainty to the entry in question, the expressions "lying on the creek," and "running down the creek for complement," must be construed to mean that the land shall be equally on both sides of the creek, A survey to correspond with this entry must run from the point of beginning on the creek, so far north and south as will, the general course of the creek having been first ascertained, include, as nearly as may be, an equal quantity of land on both sides of the creek, either in an oblong or square; for in this case neither form will affect the defendant.
It is not new necessary to decide the right of the owner or surveyor, to survey in a square or oblong at their options; but I incline to believe that if by running an oblong, the survey would interfere with a grant previously obtained, the entry would not be a special one, for any land beyond the extent of the square, unless the jury, by the expression used in it, indicated a contrary mode of surveying. It appears *Page 372 
to me that this is the only possible way to construe entries, having only general calls, so that they may be deemed special.
To illustrate this principle I will suppose that the point of beginning was the notorious call in the entry. That it then called to run down the creek for complement; and that the general course of the creek was due west; according to some decisions of the State courts, the surveyor might make a survey running along north and west, or smith and west. This construction, in my opinion, is the strongest possible argument that the entry is vague and an hold land nowhere; because you can not tell whether the land claimed by the entry is to lie on the north or south of the creek. But adopt the construction which I have given, and there is some reason for saying that the entry is special; so in a general call to include a notorious object, place that object in the centre of a square or oblong, and it is with much plausibility we decide it to be a special entry. But permit the owner or surveyor to place the notorious object in any part of the survey, and permit the survey to be made in a square or oblong at his option, is the very essence of vagueness. In the case now under consideration, the survey begins at the point of beginning called for in the entry, and runs west and north, including the creek and spring, with only a small part of the land on one side of the creek; and yet according to the construction contended for, to-wit, to include the calls of the entry in any part of the survey, the survey might have been run as far north from the point of beginning as would have included the spring and creek, and then run west and south, taking most land on the south side of the creek. To allow such an option would be in effect to make the entry wholly uncertain, and, therefore, not good for any land. can not conceive any of the ill consequences growing out of the principles here laid down, which have been surmised by some of the bar. It is not a matter of interest to society in general, or to the government, whether A or B owns a particular piece of property. But it is of the last importance, that whichever *Page 373 
of them is entitled to it by law and equity, should own and possess it.
No decision contrary to the one now given, is recollected to have taken place in this Court; and it is believed that this is in perfect harmony with the spirit of the different acts of the Legislature on that subject; and especially with that part of the law which enacts that all grants obtained for land which was previously or first specially located or entered, shall be void and of no effect. This very provision must have been made by the Legislature an the equitable principle that the first enterer of the land had an equitable right, founded on his special entry, which had given notice to the after grantee, and that, therefore, he was a mala fide purchaser. They surely did not intend that the first enterer of a well described or notorious object, should have an equitable claim to three or four times the quantity of land contained in his entry.
NOTE. — The rulings in this case are in direct conflict with the decisions of the State courts. 4 Hay., 284; 2 Tenn., 287, 416;1 Tenn. 448; Cooke, 226, 487. And by referring to 2 Tenn., 410, note, it will be seen that the jury found a verdict for the plaintiff, contrary to the charge of the Court; and upon a subsequent trial, before Todd, J., a similar verdict was found upon a different charge of the law, and there the case rested. The names of the jurors on both trials are given in that note. — ED.